# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>      Defendants. | Civil Action No. 2:23-cv-00285-JRG-RSP |

## SAMSUNG'S OPPOSITION TO COBBLESTONE'S MOTION TO MODIFY PROTECTIVE ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND .........................................................................................................1

III.    LEGAL STANDARD...................................................................................................4

IV.     ARGUMENT ...............................................................................................................4

       A.      The Nature Of the Current Protective Order Weighs Against Modifying It ...........4

       B.      The Requested Modification Was Foreseeable At The Time The Order Issued .................................................................................................................6

       C.      The Samsung Defendants Have Relied On The Current Protective Order.............9

       D.      There Is No Good Cause For Modification ..........................................................11

V.      CONCLUSION...........................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allergan, Inc. v. Teva Pharmaceuticals USA*,
    2017 WL 772486 (E.D. Tex. Feb. 28, 2017) ...........................................................4, 6, 8, 9, 11

*In the Matter of Certain Integrated Cirs., Mobile Devices Containing the Same, &*
    *Components Thereof*
    USITC Inv. No. 337-TA-1335 (Jan. 11, 2023)...................................................................13

*In the Matter of Certain Organic Light-Emitting Diode Display Modules &*
    *Components Thereof*,
    USITC Inv. No. 337-TA-1378 (Jan. 8, 2024)....................................................................14

*Cobblestone Wireless, LLC v. Cellco Partnership d/b/a Verizon Wireless*,
    Case No. 2:23-cv-00382-JRG-RSP, ECF No. 49 (E.D. Tex. Dec. 15, 2023).............................3

*Diamond Consortium, Inc. v. Manookian*,
    2017 WL 2364040 (E.D. Tex. May 31, 2017)....................................................................9

*Infernal Technology, LLC v. Elec. Arts Inc.*,
    Case No. 2:15-cv-01523-JRG-RSP, ECF No. 133 (E.D. Tex. Jan. 24, 2017).......................10

*Maxell, Ltd. v. Apple Inc.*,
    2021 WL 3012355 (E.D. Tex. Jan. 27, 2021)................................................................5, 7, 8

*MyChoice, LLC v. Taiv, Inc.*,
    2024 WL 69063 (E.D. Tex. Jan. 4, 2024)........................................................................12

*In re OnePlus Technology (Shenzhen) Co., Ltd.*,
    2021 WL 4130643 (Fed. Cir. Sept. 10, 2021) ....................................................................13

*Peoples v. Aldine Indep. School Dist.*,
    2008 WL 2571900 (S.D. Tex. June 19, 2008) .......................................................................5

*Raytheon Co. v. Indigo Sys. Corp.*,
    2008 WL 4371679 (E.D. Tex. Sept. 18, 2008) ....................................................4, 5, 8, 10, 11

*Saxon Innovations, LLC v. Nokia Corp.*,
    2009 WL 10677277 (E.D. Tex. Oct. 30, 2009) ....................................................................9

*Team Worldwide Corp. v. Walmart Inc., et al.*,
    2019 WL 13078780 (E.D. Tex. Jan. 24, 2019)................................................................11, 12

*United States v. Ocwen Loan Serv'g, LLC*,
    2016 WL 278968 (E.D. Tex. Jan. 22, 2016)....................................................................9, 11

## <u>Statutes and Rules</u>

28 U.S.C. § 1781 ...........................................................................................................................4

28 U.S.C. § 1782 .....................................................................................................................5, 6, 8

Rule 26 .........................................................................................................................................1

Rule 4(f)(3) .................................................................................................................................13

## I.      INTRODUCTION

Cobblestone chose to file three separate sets of lawsuits—two against certain wireless carriers, and this one against the Samsung defendants—accusing the same Samsung products of infringing the same patents in the same way.  Knowing it had done so, Cobblestone voluntarily agreed to a protective order in this case that did not include a cross-use provision allowing it to use discovery produced in this case in the Carrier Cases—and in fact included a provision expressly *forbidding* cross-use of discovery produced in this case in any other case.  Cobblestone now seeks to undo that decision, asking the Court to modify the protective order in this case such that discovery Samsung produces in this case can also be used in the Carrier Cases.  Cobblestone's request is improper and should be denied for failure to satisfy Rule 26 or any of the criteria courts consider when analyzing a request to modify a stipulated protective order.  Indeed, as shown below, Cobblestone does not even attempt to engage with the law governing such requests.  Additionally, Cobblestone's proposed modification would allow it to use discovery produced by Samsung Electronics Co., Ltd. ("SEC")—a Korean corporation from whom third-party discovery in the Carrier Cases is available only under the Hague Convention—without following the procedures laid out in that Convention.  Cobblestone's decision to file three sets of cases asserting the same patents against the same products, while bizarre and inefficient, may have been within its rights.  But Cobblestone caused any perceived inefficiencies resulting from that choice.  And certainly Cobblestone's desire to mitigate any such inefficiencies for itself does not justify its requested end-run around the existing protective order, Rule 26, and the United States's Hague Convention obligations.  Cobblestone's motion should be denied.

## II.     BACKGROUND

Cobblestone brought its first set of cases against wireless carriers (what Cobblestone calls the "First Carrier Actions") on December 15 and 16, 2022, asserting four of the five patents it now

asserts against Samsung.  Mot. at 4.  Cobblestone's complaints in the First Carrier Actions alleged infringement by "the tablets and phones accused of infringement in this case," which Cobblestone admits "include Samsung mobile devices and base stations."  *Id.* at 4-5 (emphasis removed). Cobblestone also acknowledges that it subpoenaed Samsung Electronics America ("SEA")— SEC's US subsidiary—in those cases and that SEA has produced documents in response to those subpoenas.  *Id.* at 5.

Cobblestone brought what it calls the Second Carrier Actions on August 25, 2023, alleging infringement of the fifth and final patent it now asserts against the Samsung defendants.  *Id.*  Again, Cobblestone accused "tablets and phones . . . includ[ing] Samsung mobile devices and base stations."  *Id.* at 5-6.  Cobblestone again subpoenaed SEA; the response date for those subpoenas has not passed.  *Id.* at 6.  While Cobblestone faults the Samsung defendants for not "agree[ing] to produce to Cobblestone in the Carrier Actions all of the discovery it has produced and will produce in this case," Mot. at 6, it omits that its subpoenas in the Carrier Actions include no such request. Exs. A, B.  Cobblestone also omits that the discovery it seeks from the Samsung defendants in this action is broader and materially different from the discovery it seeks from SEA for either Carrier Case subpoena.  *See, e.g.*, Ex. C (Request Nos. 18-25, 27-34, 36-62, 66-72, 74-86).

Cobblestone sued the Samsung defendants on June 16, 2023.  ECF No. 1.  As Cobblestone admits, "[t]he patents asserted against Samsung in this case are the same patents asserted in the Carrier Actions," and the accused products in this case include the same mobile devices and base stations accused in the Carrier Cases.  Mot. at 6.  The parties extensively negotiated a proposed protective order, and on November 10, 2023 filed a Joint Motion for Entry of Disputed Protective Order.  ECF No. 32.  The sole dispute was "the number of pages of source code that may be printed by a party."  *Id.*  The undisputed portion of the Protective Order included a provision prohibiting

using designated discovery in any other action, stating that "[d]ocuments, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties *only in the litigation of this Action and shall not be used for any other purpose*."  ECF No. 32-1 ⁋ 8 (emphasis added).  The Court entered the Protective Order, including that provision, on December 1, 2023.  ECF No. 36 ⁋ 8.

Thus, Cobblestone has thus far filed three sets of lawsuits accusing the same products of infringing the same patents.  Noting the "procedural quagmire" created by "Cobblestone's decision to file its cases in this piecemeal manner"—a quagmire that potentially includes up to "seven trials, three different scheduled *Markman* hearings, three different pre-trial conference dates, three different discovery periods, and three different rounds of potential dispositive motions before the Court"—the carriers moved to consolidate the Carrier Cases on December 15, 2023.  *See Cobblestone Wireless, LLC v. Cellco Partnership d/b/a Verizon Wireless*, Case No. 2:23-cv-00382-JRG-RSP, ECF No. 49 (E.D. Tex. Dec. 15, 2023).[1]  Cobblestone opposed.  *See id.*, ECF No. 86 (E.D. Tex. Jan. 12, 2024).

Cobblestone's motion seeks to use discovery produced by either Samsung defendant in this case in the Carrier Cases. Mot. at 8.  SEC is a corporation headquartered in, and organized under the laws of, the Republic of Korea.  ECF No. 1 ⁋ 2.  The United States and the Republic of Korea are both signatories to the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.[2]

---

[1]  The carriers filed the same motion in each of the carrier cases.

[2]  *See* HCCH Members https://www.hcch.net/en/states/hcch-members (last visited Mar. 7, 2024); *see also* 28 U.S.C. § 1781.

## III.    LEGAL STANDARD

"In deciding whether to modify a stipulated protective order at the behest of a party that originally agreed to the order for reasons related to the private interests of the parties to the action, the court considers four factors: (1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Raytheon Co. v. Indigo Sys. Corp.*, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008) (footnote and internal quotation omitted).

## IV.    ARGUMENT

### A.    The Nature Of the Current Protective Order Weighs Against Modifying It

The "nature of the protective order" factor refers to the protective order's "scope and whether it was court imposed or stipulated to by the parties." *Allergan, Inc. v. Teva Pharmaceuticals USA*, 2017 WL 772486, at *4 (E.D. Tex. Feb. 28, 2017) (internal quotation omitted).   Specifically, this factor focuses on whether the protective order is (1) a "specific protective order[]" that "cover[s] specifically identified information"; (2) an "umbrella protective order[]" that "provide[s] for the designation of all discovery as protected without any screening by either the parties or the court"; or (3) a "blanket protective order[]" that "require[s] the parties to designate as protected that information that each side reasonably believes to be particularly sensitive." *Raytheon*, 2008 WL 4371679, at *2.   Specific protective orders are the least prone to modification, umbrella protective orders are the most, and "blanket protective orders fall somewhere in between." *Id.*   This factor disfavors modification where the protective order is stipulated because "a party's prior consent to the protective order will weigh against its motion for modification." *Peoples v. Aldine Indep. School Dist.*, 2008 WL 2571900, at *2 (S.D. Tex. June 19, 2008) (internal quotation omitted); *Raytheon*, 2008 WL 4371679, at *2.

4

Here, this factor weighs against modification.  The Protective Order in this case is a blanket protective order—it "allows the parties to designate information as protected that they, in good faith, deem to be worthy of heightened secrecy."  *Raytheon*, 2008 WL 4371679, at *2; *see also* ECF No. 36 ¶ 1.  The Protective Order in this case was also stipulated, except as to one narrow provision (involving the number of source code pages a party can print) not implicated by Cobblestone's motion.  ECF Nos. 32, 32-1.  In *Raytheon*, the court confronted a nearly identical situation with respect to this factor: a stipulated blanket protective order.  The court there noted that "[t]hough blanket orders are moderately susceptible to modification, the parties stipulated to the protective order, and that factor weighs against modification," ultimately concluding that "[t]he nature of the protective order weighs in favor of denying modification."  *Raytheon*, 2008 WL 4371679, at *2.  The same result is proper here.

Cobblestone's motion does not try to analyze this factor under the proper legal standard as laid out in *Raytheon*.  Instead, Cobblestone simply asserts that, because it claims the Carrier Cases feature "virtually identical protective orders . . . this factor [] weighs in favor of granting Cobblestone's motion."  Mot. at 9.  In support of this, Cobblestone cites only *Maxell, Ltd. v. Apple Inc.*, 2021 WL 3012355 (E.D. Tex. Jan. 27, 2021).  But *Maxell* was a **Section 1782** opinion concerning Maxell's request to use Apple's and Intel's previously-produced documents in a co-pending **German** litigation.  *Id.* at *1.  The court there held, after a detailed analysis of the Section 1782 *Intel* factors (*id.* at *3-4), that "good cause exist[ed] to modify the protective order to allow Maxell's narrowly tailored use of Apple and Intel's previously produced materials."  *Id.* at *4.  That Section 1782 analysis (of four entirely distinct factors from those used in analyzing motions to amend protective orders) has nothing to do with the facts or legal issues here.  Even setting that aside, Cobblestone's assertion that "the scope and breadth of the requested modified Protective

Order would protect Samsung's documents and information just as forcefully as the current Protective Order" misses the point.  Mot. at 9.  The current Protective Order prevents the Samsung defendants' materials from being used in any other case (ECF No. 36 ⁋ 8); Cobblestone's proposed modifications would allow it to use those materials in other cases, to which the Samsung defendants are not parties, however it saw fit.  Mot. at 12.  That is by definition not the same level of protection.  Thus, the nature of the Protective Order in this case weighs against modification.

**B.**     **The Requested Modification Was Foreseeable At The Time The Order Issued**

"Parties that agree to a protective order are responsible for its terms."  *Allergan*, 2017 WL 772486, at *5.  Cobblestone admits that the Protective Order the Court entered in this case "was based on a joint motion filed [by] Cobblestone and Samsung," and does not dispute that the agreed portion of the Protective Order included a provision barring use of discovery produced in this case for any purpose other than the litigation of ***this*** case.  Mot. at 9; ECF No. 32-1 ⁋ 8; ECF No. 36 ⁋ 8.  But Cobblestone asserts that at the time of the joint filing (November 10, 2023), "it could not have known that Samsung would refuse to agree to a cross-use between this case and the related Carrier Actions."  Mot. at 9.  The agreed facts here squarely rebut that assertion: the parties negotiated and ***stipulated to*** a Protective Order that ***expressly bans cross-use***, ordering that documents and other information "produced pursuant to any discovery request in this Action … shall be used by the Parties only in the litigation of this Action and ***shall not be used for any other purpose***."  ECF No. 32-1 ⁋ 8; ECF No. 36 ⁋ 8 (emphasis added).

Thus, Cobblestone not only could have known the Samsung defendants would not agree to cross-use, it ***did*** know that the Samsung defendants wanted a provision ***prohibiting*** cross-use—and Cobblestone agreed to that provision.  Nor does Cobblestone's assertion that it "could not have known . . . that Samsung would refuse to provide, in the Carrier Actions, the same discovery it was providing in this case" help its argument.  Mot. at 9-10.  The Samsung defendants, which are not

parties to the Carrier Cases, had (and have) no obligation to provide "the same discovery" in those cases they are "providing in this case," where they *are* parties. That is particularly true because Cobblestone is seeking materially different discovery in this action from the Samsung defendants compared to the subpoena it served in the Carrier Cases on SEA.  Cobblestone has subpoenaed SEA (the US entity) in both sets of Carrier Cases; SEA has produced responsive documents in the first set of Carrier Cases and its production is not yet due in the second. *Supra* at 2.  Cobblestone does not meaningfully argue that SEA's productions in the Carrier Cases are deficient and, indeed, expressly states that it is ***not*** asking the Court to compel further production from the Samsung defendants in this case or the Carrier Cases.  Mot. at 10 n.4.  In any event, if Cobblestone took issue with the Samsung defendants' third-party productions in the Carrier Cases, the remedy would not be to circumvent the rules of discovery and allow it to use discovery from this case in those cases.

Again, the only case Cobblestone cites in support of its argument on this factor is *Maxell, Ltd. v. Apple Inc.*, 2021 WL 3012355 (E.D. Tex. Jan. 27, 2021).  Again, that case does not support Cobblestone's position.  There, Maxell filed its first German case about a month ***after*** the protective order was entered.  *Id.* at *1.  When Apple raised certain non-infringement positions in the German proceedings, Maxell sought amendment of the protective order to allow it to use previously-produced materials in the German case.  *Id.*  The court—after, again, a detailed analysis of the entirely distinct Section 1782 *Intel* factors—allowed Maxwell to do so.  *Id.* at *3-5.  In the language Cobblestone quotes, the court noted that "to require Maxell to have negotiated the original protective order with every possible parallel proceeding in mind is both impractical and burdensome."  *Id.* at *4.  Here, no one expected Cobblestone to have "every possible parallel proceeding in mind" when the parties negotiated the Protective Order—just the two sets of already-

pending cases in which Cobblestone accused the same products of infringing the same patents.  In stark contrast to *Maxell*, where the parallel German case had not yet been filed when the court entered the protective order at issue, here both sets of Carrier Cases were pending when the parties negotiated the Protective Order in this case.  *Supra* at 2.  *Maxell*, again, does not apply to the facts before the Court here.

Instead, this case is again very similar to *Raytheon*.  There, the court phrased the foreseeability inquiry as "could the parties have been reasonably expected to anticipate the exigency which prompted the instant Motion?"  *Raytheon*, 2008 WL 4371679, at *2.  With that standard in mind, the court found that the moving party—which sought to gain access to confidential materials for certain in-house employees—had known since the beginning of the case that those employees were accused of wrongdoing and thus that it might be useful for them to have access to discovery materials.  *Id.*  So too here: Cobblestone has known since it filed this case that it had co-pending lawsuits against the carriers in which it accused the same Samsung products of infringing the same patents, and nonetheless agreed to a provision that bans the type of cross-use it now asks the Court to allow.  *Supra* at 2-3.  "Whether [Cobblestone's] failure to secure [its desired cross-use provision] was an oversight or a result of the balance struck between the parties regarding the competing interests addressed in the protective order, [Cobblestone] should not now be allowed to dramatically and unilaterally reposition that balance at this stage in the litigation." *Raytheon*, 2008 WL 4371679 at *2; *see also Allergan*, 2017 WL 772486, at *5 (this factor weighed against modification where moving party's desire to amend "was foreseeable . . . at the time [it] accepted the protective order as governing"); *United States v. Ocwen Loan Serv'g, LLC*, 2016 WL 278968, at *3 (E.D. Tex. Jan. 22, 2016) (foreseeability factor weighed against modification where proposed change "was foreseeable at the time the parties negotiated and agreed to the Protective

Order").  This factor strongly weighs against modification.

### C.        The Samsung Defendants Have Relied On The Current Protective Order

"The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery." *Allergan*, 2017 WL 772486, at *5 (quoting *Ocwen Loan Serv'g*, 2016 WL 278968, at *2).  It is "presumptively unfair" to modify a protective order that assures confidentiality and on which the non-moving party has reasonably relied.  *Id.*  As a result, this factor weighs against modification where the non-moving party has "made huge documentary productions under the governing protective order" and did so "in reliance on the terms of" that protective order.  *Id.* at *6.  As Cobblestone admits, the Samsung defendants have done just that: they have produced nearly half a million pages of documents between them, and designated most of them as "Attorneys' Eyes Only" under the Protective Order.  Mot. at 7.  That alone tilts this factor against modification.  *Allergan*, 2017 WL 772486, at *5; *see also Ocwen Loan Serv'g*, 2016 WL 278968, at *3 ("[B]ecause Defendants relied on the Protective Order when producing documents . . . the third factor weighs against modification of the Protective Order."); *Saxon Innovations, LLC v. Nokia Corp.*, 2009 WL 10677277, at *3 (E.D. Tex. Oct. 30, 2009) (reliance factor weighed against modification where "the Court has no reason to believe that [the non-moving party] did not rely on [the disputed paragraph] to inform its decisions throughout fact discovery"); *Diamond Consortium, Inc. v. Manookian*, 2017 WL 2364040, at *2 (E.D. Tex. May 31, 2017) ("The reliance factor thus weighs against modifying the protective order" because this factor "focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery" (quoting *Raytheon*, 2008 WL 4371679 at *3)).

Again, Cobblestone does not meaningfully engage with the law governing this factor.

Instead, Cobblestone simply declares that this factor favors modification because the protective orders in the Carrier Cases are similar to the Protective Order in this case.  Mot. at 10-11.  But Cobblestone does not explain why that means the Samsung defendants could not have reasonably relied on the Protective Order *in this case* in deciding what and how to produce *in this case*.  And the only case Cobblestone cites in this section is *Infernal Technology, LLC v. Elec. Arts Inc.*, Case No. 2:15-cv-01523-JRG-RSP, ECF No. 133 (E.D. Tex. Jan. 24, 2017), which Cobblestone cites for the proposition that the "typical factors assessed by a court when deciding whether to modify a protective order are therefore not as salient in a case . . . where it appears that the protected information will in fact remain protected."  Mot. at 11.  But *Infernal Technology* is readily distinguishable.  There, the moving party sought to modify the protective order to "use certain material that has been designated confidential under the protective order in related *inter partes* review (IPR) proceedings."  *Id.* at 1. The Court heavily relied on the fact that the related proceedings were IPRs in granting the motion, noting that the non-moving party's "complaint about the scope of IPR discovery is one for the Patent Office, not this Court."  *Id.* at 2.  That case has no bearing here, where the related proceeding is another district court case in which the Samsung defendants are not parties—and in which discovery is available from SEC *only* via the Hague Convention.  Cobblestone also reads the language of *Infernal Technology* far too broadly: if Cobblestone were right that this sort of modification is appropriate wherever the parallel proceedings also had a protective order, the effect would be to create an almost automatic cross-use provision in every case where either party wants one, even where (as here) the parties had previously agreed to a protective order that expressly forbids cross-use.

Thus, the Samsung defendants' reasonable reliance on the existing Protective Order weighs heavily against Cobblestone's requested modification.

D.    <u>There Is No Good Cause For Modification</u>

"Good cause requires changed circumstances or new situations warranting modification of a protective order." *Allergan*, 2017 WL 772486, at *6 (quoting *Ocwen Loan Serv'g*, 2016 WL 278968 at *4). "The Court must weigh the moving party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals." *Id.* And "[b]ecause the protective order was entered for good cause, it is the [moving party's] burden to establish good cause for modifying" it. *Raytheon*, 2008 WL 4371679 at *3 (footnote omitted). Again, Cobblestone does not try to engage with the legal standard governing this factor—in other words, Cobblestone does not and cannot suggest that any changed circumstances warrant its proposed modification. Instead, it simply asserts that good cause exists because the patents and products at issue in this case are the same as those at issue in the Carrier Cases, so allowing Cobblestone to use discovery from this case as though it was also produced in those cases would create efficiencies across the cases. Mot. at 11-12. But those supposed efficiencies (which Cobblestone itself rejected in favor of filing three sets of lawsuits and rejected again in opposing their consolidation) are not the sort of "changed circumstances or new situations" that amount to good cause to modify a stipulated protective order. *Allergan*, 2017 WL 772486, at *6.

Indeed, the only case Cobblestone cites as supporting its position is *Team Worldwide Corp. v. Walmart Inc., et al*., 2019 WL 13078780 (E.D. Tex. Jan. 24, 2019). But *Team Worldwide,* like *Infernal Technology*, concerned use of discovery from a district court case in a parallel **IPR** proceeding, as well as an arbitration. *Id.* at *1. And there the Court granted only a "narrow[]" modification to the protective order, taking care to note that "amending the Protective Order to permit the use of information produced in this matter to also be used before the PTAB does not mean that such material is discoverable (or can in fact be used) at the PTAB" and that instead the

11

modification only meant that "should the PTAB authorize additional discovery on any documents covered by the Protective Order . . . TWW may produce information from this litigation without violating this Court's Protective Order." *Id.* at *2. Here, Cobblestone is not asking for authorization to use a relatively small number of documents (only 55 were at issue in *Team Worldwide*) should the Court in the Carrier Cases authorize it to do so; it is asking for blanket authority to use hundreds of thousands of pages (and eventually source code) produced in this case in other cases as it sees fit.

That would be improper even if all affected parties were US-based companies. But as discussed above (*supra* at 3-4), SEC is a Korean corporation, and thus third-party discovery is only available from it via the Hague Convention because "[t]he Hague Convention procedure is mandatory if available at the place of service." *MyChoice, LLC v. Taiv, Inc.*, 2024 WL 69063, at *2 (E.D. Tex. Jan. 4, 2024) (internal quotation omitted); *see also* Hague Convention, 20 U.S.T. at 362 ("The present Convention *shall* apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.") (emphasis added). Cobblestone has made no effort to serve SEC via the required Hague procedures. Instead, Cobblestone, by asking the Court to allow it to use discovery taken from a Korean company in this case in other cases in which that company is not a party, seeks an end run around the Hague Convention's requirements. And Cobblestone's bare assertions that doing so would be more convenient (for Cobblestone) do not justify the relief it seeks. *See* Mot. at 11-12. The Federal Circuit has cautioned—albeit in the context of requests for alternative service under Rule 4(f)(3)— that the Hague Convention's requirements cannot be avoided where they are "merely inconvenient." *In re OnePlus Technology (Shenzhen) Co., Ltd.*, 2021 WL 4130643, at *3–4 (Fed. Cir. Sept. 10, 2021). The same logic should apply here, and Cobblestone's attempt to avoid

mandatory requirements imposed by a treaty to which the United States is a signatory further precludes a finding of good cause.

Similarly, Cobblestone's proposed change to the Protective Order would force SEC to incur the significant time and expense of complying with Korean law governing the export of technology.  The South Korean Ministry of Trade, Industry, and Energy ("MOTIE") administers Korea's Act on Prevention of Divulgence and Protection of Industrial Technology, commonly called the "Industrial Technology Act" or "ITA."  *See* Seok Hee Lee, John J. Kim & Ho-Yeon Lee, 2 Trade Secrets Throughout the World § 24:26 (2023).  Information designated "National Core Technology" under the ITA may not be disclosed without the approval of MOTIE's Industrial Technology Protection Committee.  *Id.*; s*ee also* Act on Prevention of Divulgence and Protection of Industrial Technology, Act No. 19166, 03 Jan. 2023, Partial Amendment, Article 9-2. "Exporting national core technology without obtaining approval" from MOTIE is a violation of the ITA subject to penalties.  *Id.* Article 14(5).

Samsung's technical documents and source code related to 4G and 5G technology are designated as national core technology subject to the ITA, and ITA compliance regularly takes Samsung considerable time and expense when Samsung technology is at issue in U.S. litigation. *See, e.g.*, *In the Matter of Certain Integrated Cirs., Mobile Devices Containing the Same, & Components Thereof* USITC Inv. No. 337-TA-1335 (Jan. 11, 2023) (granting in-part mot. to amend procedural schedule) (noting "delay in Samsung's ability to produce certain materials subject to the restrictions imposed by the Korean Ministry of Technology, Industry and Energy ('MOTIE')."); *In the Matter of Certain Organic Light-Emitting Diode Display Modules & Components Thereof*, USITC Inv. No. 337-TA-1378 (Jan. 8, 2024) (adopting procedural schedule) (discussing "delays associated with obtaining approval for discovery, as many [sic] be required,

from the Korean Ministry of Trade, Industry, and Energy ('MOTIE')").  Indeed, Samsung is currently working through the process to secure MOTIE approval to produce documents and source code in this case.  But MOTIE approval for such production would be limited to *this* case. If the Court granted Cobblestone's requested cross-use provision, SEC would incur significant additional time and expense to secure MOTIE approval to produce the relevant documents and source code in the Carrier Cases as well.  This additional burden further cuts against a finding of good cause.

Ultimately, Cobblestone asks the Court to relieve it of its obligations under the Protective Order in this case, the Federal Rules of Civil Procedure, and the Hague Convention, and to subject Samsung to additional burdens under the ITA—all to ease the burden it imposed on itself by choosing to file three sets of cases accusing the same products of infringing the same patents. Cobblestone has failed to show good cause for its requested modification of the Protective Order.

## V.  CONCLUSION

Samsung respectfully requests that the Court deny Cobblestone's motion.

Dated: March 7, 2024

Respectfully submitted,

*/s/ Melissa R. Smith*
Victoria F. Maroulis
California Bar No. 202603 (admitted in E.D. Tex.)
victoriamaroulis@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-801-5100

Sean Pak
California Bar No. 219032 (*pro hac vice*)
seanpak@quinnemanuel.com
Iman Lordgooei
California Bar No. 251320 (admitted in E.D. Tex.)
imanlordgooei@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Kevin Hardy
D.C. Bar No. 473941 (admitted in E.D. Tex.)
kevinhardy@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
Fax: 202.538.8100

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

*Counsel for Defendants*

*Samsung Electronics Co., Ltd. and*
*Samsung Electronics America, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on March 7, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:  March 7, 2024                    *<u>/s/ Melissa R. Smith</u>*
                                                            Melissa R. Smith

17